Williams, J.
The action of Quo Warranto may be maintained under our statute, (1) against a person who unlawfully exercises a franchise, and (2) against an association of persons who act as a corporation within the state without being legally incorporated; and the present action is prosecuted on both of these grounds. The position taken in support of the demurrer, is that the defendants, in transacting the business of insurance in the manner alleged in the,petition, do not exercise a franchise, or act as a corporation, but are pursuing, as individuals, an occupation in which any person may of natural and common rig’ht engage; which right, it is contended, cannot be abridged or controlled by legislation, and hence, the defendants are not subject to the conditions and regulations imposed by the laws of the state on companies and associations doing an insurance business.
Insurance, in its early existence, when the nature of the risks assumed were few, and the *190 amount of business small, was done chiefly, if not entirely, by individuals. But in more recent times, it has been extended until it embraces almost every kind of risk, and has g'rown to such proportions that it enters into every department of business, and affects all classes of people and their property; and has, in consequence, everywhere, become the subject of legislative regulation and control. The several states have enacted laws, designed to place the business within their limits on such substantial basis as will afford adequate protection to the citizens, and their property. There can be no doubt of the power of the state to do so; nor, that the power extends to the enactment of such laws as its legislative body may deem wise and proper for the purpose, not in conflict with the fundamental law; and, therefore, within the legitimate exercise of that power, foreign companies may be excluded altogether from doing business in the state, or admitted on their compliance with such terms and conditions as its legislature chooses to impose.' There has .been enacted in this state, an extensive code or system of laws, covering the whole subject of insurance, regulating the incorporation and organization of companies and associations for the transaction of the various kinds of insurance, and prescribing their powers and duties, defining the scope and effect of their policies, and otherwise regulating their business. They are required, as a means of protection of those who deal with them, to deposit adequate securities and invest their capital and earnings in designated modes, in the state, make periodical reports of their financial condition and business affairs, submit to visitations, and examinations *191 of their affairs by a public officer charged with the duty of enforcing the insurance laws, and comply with other specified requirements ; a compliance with all of which by companies and associations organized in the state, is essential to their right to carry on the business. Foreign companies, before doing business in the state, are required to conform to the same regulations, and others peculiarly applicable to them; among which latter, are those which prohibit any “insurance company, association, or partnership, incorporated, organized, or associated under the laws of any other of the United States, or of any foreign government, ” from doing an insurance business “in this state, until it procures from the superintendent a certificate of authority to do so, ’ ’ and forbid any person or corporation to “act as agent in this state for any such company, association, or partnership, directly or indirectly, either in procuring applications for insurance, taking risks, or in any manner transacting the business of insurance, until it procures from the superintendent a license to do so, stating that the company, association, or partnership has complied with all the requirements of,” the insurance laws, “applicable to such company, and depositing a certified, copy of such license in the office of the recorder of the county in which the office or place of business of such agent or agents is established.” Revised Statutes, section 3656.
The chapter of' the Revised. Statutes'which establishes the department of insurance, and places it under the management of the superintendent, provides, among other things, that officer shall be appointed by the Governor, by and with the advice and consent of the senate. He holds his office for *192 a fixed period, and is paid a stated salary; he is provided with an office in the state house, and is specifically charged with the duty of seeing to the execution and enforcement of. all laws relating to insurance; he is authorized to investigate the business and affairs of all insurance companies, whether foreign, or domestic, and employ skilled and competent persons to assist him; it is made his duty, when he has reason to suspect that the affairs of any company are in an unsound condition, to cause them to be investigated, and its officers and agents are required to submit themselves to examination under oath, and their books and business to his inspection, and in every other way facilitate the investigation; and when satisfied the company is in an unsound condition, his duty is to revoke its authority to do business, and from his decision there is no appeal. State v. Moore, 42 Ohio St., 103. He must keep a record, and preserve in permanent form his proceedings, including a concise statement of the condition of each'company, and make reports to the legislature, of the conduct and condition of each company doing business within the state, with such suggestions as he may deem expedient. In short, his department is a branch of the state government, and his functions are derived from the state, and exercised in the public interest. Every insurance company, before commencing business, is required to pay into the department certain fees and charges for filing its charter, and others for filing its preliminary statement for admission, and for its certificate of authority to do business, and for licenses to its agents; and after the company commences business, it “shall publish, at least once a year, in some newspaper of general circulation, in every *193 county where such company has an agent, a certificate from the superintendent of insurance that such company has, in all respects, complied with the laws of the state relating to insurance. ” It is made unlawful for any person, company, or corporation not licensed by the superintendent of insurance, to receive or forward applications for insurance in any foreign company, or in any manner aid in the transaction of its business; and severe penalties are attached to the violation of any of the provisions of the chapter which provides for the appointment of the superintendent, including those already pointed out, all of which are made applicable expressly, “to individuals and parties, and to all companies and associations, whether incorporated or not, now or hereafter engaged in the business of insurance;” and it is further made unlawful for any ‘ ‘company, corporation, or association, whether organized in this state or elsewhere, either directly or indirectly, to engage in the business of insurance, or to enter into any contracts substantially amounting to insurance, or in any manner to aid therein, in this state, without first having complied with all the provisions of this chapter.” Revised Statutes, section 289.
These are some of the many statutory provisions showing the extent to which the state has taken control of the business of insurance. They are reasonable and just, and were adopted for the laudable purpose of protecting the public against imposition by unreliable and untrustworthy companies and associations. Compliance with them is made the condition upon which foreign companies and associations are allowed to transact the business of insurance within the state. There is not *194 such, compliance until the company or association has obtained from the superintendent of insurance the necessarjr certificate of authority, and licenses to its agents. Companies and associations that have not received such certificate, are denied the privilege of doing business here. The certificate of authority so granted by the superintendent, so long as it remains in force, confers on the company or association receiving it, the right and privilege of carrying on its business of insurance in the state. The authority emanates from the state, and the privilege granted is a franchise.
The author of a recent and well prépared work, treating of this subject, says: “Where, by statute, the legal exercise of a right, which at common law was private, is made to depend upon compliance with conditions interposed for the security and protection of the public, the necessary inference is that it is no longer private, but has become a matter of public concern, that is, a franchise, the assumption and exercise of which without complying with the conditions prescribed would be a usurpation of a public or sovereign function. In this case, the legislature has done no more than was done by the court in the other instance, when it, from considerations of a public nature, declared, as a principle of the common law, that facts brought to its notice, or of which it then took judicial notice, warranted the application of principles existing independently of the legislative declaration to the effect that the right claimed was matter of public and not exclusively of private concern.” Spelling on Extraordinary Relief, sec. 1807. The same author further says:
“There was no class of business, the transaction of which, as a matter of private right, was better *195 recognized, at common law than that of making contracts of insurance upon the lives of individuals. But now, by statute, in almost, if not quite all the states, stringent requirements as to security of the persons dealing with insurers and the making and filing reports with public officers for public information, are provided, and must be strictly observed and complied with before any person, association or corporation may make any contract of life insurance. The effect of such statute is to make that a franchise which previously had been a matter purely of private right.” Ibid, section 1808.
It is claimed, however, that the laws of Ohio do not apply to the defendants, because they are not ■ an organized corporation, company or association, or acting as such, but that, in making contracts of insurance, each individual acts for himself. A careful consideration of their plan of business, as shown by the articles of agreement and powers of attorney executed by the defendants, has brought us to a different conclusion. They have associated themselves together in a business undertaking, under a company name, in which, viz: ‘ ‘Guarantee and Accident Lloyds, New York, ’ ’ all of their policies are issued. Each subscriber to the articles has contributed an equal amount to the capital stock of the concern, which is placed in the control of a board of managers, called an advisory committee, to meet losses arising on the policies. This board of managers is chosen by the subscribers, like the directors of a corporation, and invested with powers quite as plenary. All the subscribers have executed powers of attorney'to the same individuals, investing them with the business management of the insurance, under the supervision of the advisory board. *196 The powers conferred on the attorneys in fact, are analagous to those of the executive officers of a corporation. They execute the policies, keep accounts of the business and expenses, which are open to the inspection of the advisory board, adjust all losses, and prosecute and defend all suits growing out of the business. Each member of the association stipulates with the others that no policy shall be issued unless it is executed in behalf of all, and yet, that his liability shall be several only, and limited to the amount contributed to the fund, or authorized by him; so that, if some of the members become insolvent, and their contribution is exhausted in losses, or otherwise, the policy shall be enforceable against the others, only for an aliquot part equal to the proportion of the solvent to the insolvent members. The liability of a stockholder of a corporation is not more restricted. Then, the interest of each member in the concern is made transferable ; a member who wishes to withdraw being authorized to procure another to take his place, and the representative of a deceased member may transfer the latter’s share in like manner, and, in that way, the organization may be made as enduring as it is possible for any corporation to be. The association has the appearance, and some of the characteristics of a corporation formed for the purpose of doing a general insurance business in its line, and its form of policies, and mode of conducting its business are calculated to impress one who does not make a critical examination, with the belief that it is a corporation, conforming to the usages of such companies. The character of the organization under which the defendants are operating, and their method of business, bring them, we think, within the purview of that clause of section 6760, *197 of the Revised Statutes, which authorizes an action in quo loarranto to be brought ‘ ‘against an association of persons who act as-a corporation within this state without being legally incorporated. ” To be within the operation of that provision, it is not necessary that the association, or persons composing it, avow a purpose to act as a corporation, or assume to do so; it is- sufficient that the acts are such as appertain to corporations, or are done after the manner of corporations.
Under a statutory provision identical with that of section 6760, quoted above, it was held by the Supreme Court of Illinois, that “An association, or number of persons, who, in conducting the business of insurance, profess to limit their liability to the amount of money contributed by each, and assume to give perpetuity to the business by making membership certificates transferable by the assignment of the member or his-personal representatives, are ‘acting as a corporation,’ so as to authorize a judgment of ouster in 'quo warranto, under Revised Statutes, Illinois, 1874, c. 112, where they are not legally incorporated. ” Greene et al. v. People, 21 N. E. Rep., 605.
The case is much in point; and we fully concur in the doctrine announced by Scholfield, J., in the opinion, where it is said: “The question here is whether, under the facts presented by this record, ‘any association or number of persons are acting within this state, as a corporation, without being legally incorporated. ’ If they are, the judgment below is authorized by our statute entitled "quo warranto" (chapter 112, Rev. Stat., 1874, p. 787), and must be affirmed; otherwise it must be reversed. We think it clear that, in two respects at least, these respondents are acting as *198 a corporation, and it is not pretended that they are actually incorporated, namely: First, in professedly limiting their liability to the amount of money contributed by each; second, in assuming to give perpetuity to the business by making membership certificates transferable by the assignment of the member or his personal representative. It may be, as contended by counsel, that individuals may insure property against loss by fire. They cannot limit their liability to any given amount of capital they choose to set apart for that purpose, nor can they perpetuate the business without change of capital, beyond their own lives indefinitely. These things can only be done by a corporation. Ang. & A. Corp. (9th ed.), §41; 2 Kent. Comm. (8th ed.), 296, 298; Pars. Partn. (2d Am. ed.), 544; Gow. Partn. (2d Amer. ed.), 17. The fact that these respondents may be legally held individually liable upon any policies they may have issued does not relieve them of the charge of having acted as a corporation. They are, if individually liable, only liable because they have no statutory authority to do what they have assumed to do, because, instead of being a corporation in fact, they have usurped the powers of the corporation. Were we to hold that these respondents can do, without any legislative authority, what they here assume to do, our insurance laws ought to be repealed; for individuals, then, by organizing in this manner, could escape both individual and corporate liability beyond the amount of assets they might choose to place in the hands of their trustee as the basis of their liability. No public officer could' investigate whether the amount is in fact paid in, how it is invested, or how secured, and the public would thus have *199 practically no protection against dishonest companies. These respondents, if they will carry on the business of insurance, must either openly act upon their responsibility as individuals, or they must become incorporated, and' subject themselves to the laws governing such corporations.” The judgment below was accordingly affirmed. The grounds held sufficient for ousting the respondents in that case are present in the case before us.
The averments of the petition sufficiently show that the defendants, in transacting the business of insurance in this state, are unlawfully exercising a franchise within the state, and are acting as a corporation therein without being legally incorporated.

Demurrer overruled and judgment of ouster.